Frances Arroyo #276747
Los Angeles Legal Advocates
farroyo@lalegaladvocates.com
1025 W 190th St
Suite 400
Gardena, CA 90248

Natalie Renee Shepherd
Of Counsel
(805) 907-5309
NatalieReneeShepherd@gmail.com

*Attorneys for Petitioner*

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL ANDRES IBARRA MARIN,<br><br>Petitioner,<br><br>vs.<br><br>FERETI SEMAIA, WARDEN OF THE ADELANTO ICE PROCESSING CENTER,<br><br>JAIME RIOS, DIRECTOR OF LOS ANGELES FIELD OFFICE, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT;<br><br>MARKWAYNE MULLIN, SECRETARY OF THE U.S. DEPARTMENT OF HOMELAND SECURITY; AND<br><br>TODD BLANCHE, ATTORNEY GENERAL OF THE UNITED STATES,<br><br>IN THEIR OFFICIAL CAPACITIES,<br><br>Respondents | PETITION FOR WRIT OF HABEAS CORPUS<br><br>Challenge to Unlawful Incarceration Under Color of Immigration Detention Statutes; Request for Declaratory and Injunctive Relief<br><br>Case No. 5:26-cv-04703 |

## INTRODUCTION

1. This case concerns the unlawful detention of a noncitizen who was lawfully admitted to the United States, was later arrested in the interior, and is now detained by Immigration and Customs Enforcement without any individualized determination that his continued confinement is necessary. His detention is governed by the discretionary custody framework of 8 U.S.C. § 1226(a).

2. Petitioner Miguel Andres Ibarra Marin is a native and citizen of Mexico who was admitted to the United States through Los Angeles International Airport on December 20, 2024, as a nonimmigrant visitor pursuant to a valid B-1/B-2 visa, with authorization to remain through June 19, 2025. Petitioner has no criminal convictions. On August 6, 2026, Petitioner was taken into federal immigration custody and is presently detained at the Adelanto ICE Processing Center.

3. Petitioner is not subject to a final order of removal. Removal proceedings were initiated following his detention and remain pending before the Immigration Court. Yet Petitioner remains incarcerated without any individualized determination that his detention is necessary to protect the community or ensure his appearance at future proceedings.

4. Petitioner's detention is governed by 8 U.S.C. § 1226(a), not the mandatory detention provisions of § 1225(b). Section 1225 governs noncitizens seeking admission at the threshold of entry, while § 1226 governs the arrest and detention of noncitizens already present in the United States pending removal proceedings. *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). The Ninth Circuit recently confirmed that noncitizens apprehended in the interior are subject to § 1226 rather than § 1225(b)(2)(A). *Rodriguez Vazquez v. Bostock*, No. 25-6842, slip op. at 10 (9th Cir. July 30, 2026).

5. Petitioner falls squarely within § 1226(a). DHS's own Notice to Appear expressly identifies Petitioner as a noncitizen who "ha[s] been admitted to the United States, but [is] removable for the reasons stated below," alleges that he was admitted at Los Angeles on December 20, 2024 as a nonimmigrant visitor, and charges him as removable under INA §

237(a)(1)(B) for remaining in the United States beyond the period authorized by that admission. Petitioner was later arrested in the interior of California; he was not apprehended while seeking admission at a port of entry or in connection with an attempted border crossing. Section 1225(b)'s mandatory detention regime therefore provides no lawful basis for his present detention.

6. The consequences are concrete and ongoing. Petitioner has no criminal convictions. He has established substantial ties to his community, pursued educational and professional advancement, and has a stable relationship with his United States citizen fiancée, who is prepared to provide housing and support upon his release. Nevertheless, Petitioner remains civilly incarcerated without any adjudicator having determined that he poses a danger or flight risk.

7. Because Petitioner is being deprived of his liberty without the individualized custody process applicable under § 1226(a), his continued detention cannot stand. Petitioner respectfully requests that this Court grant the writ and order his immediate release or, alternatively, order Respondents to provide a prompt and constitutionally adequate individualized custody determination under § 1226(a).

**JURISDICTION & VENUE**

8. This Court has jurisdiction under 28 U.S.C. § 2241 because Petitioner is in custody under the authority of the United States and seeks a writ of habeas corpus. This Court also has jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution, laws, and treaties of the United States, and under 5 U.S.C. §§ 701–706 because Petitioner challenges agency action that is arbitrary, capricious, and not in accordance with law.

9. This Court has authority to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201–2202.

10. Neither 8 U.S.C. §§ 1252(b)(9) nor 1252(g) bar this Court's review.

11. Section 1252(b)(9) is a "zipper clause" that channels review of claims arising from removal proceedings into petitions for review in the courts of appeals. It does not apply

where, as here, no final removal order exists and Petitioner challenges only the statutory authority under which he is detained. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482–83 (1999). As the Supreme Court explained in *Jennings v. Rodriguez*, 583 U.S. 281 (2018), detention claims that raise "questions of law"—including whether DHS is detaining Petitioner under the correct statutory authority and whether that authority permits his continued detention without an individualized custody determination—do not "arise from" removal proceedings and therefore fall outside § 1252(b)(9). *Id.* at 292–95. The Ninth Circuit has repeatedly held that §§ 1252(a)(5) and (b)(9) do not preclude district-court review of claims that are "independent of or collateral to the removal process," including challenges to unlawful or prolonged immigration detention. *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031–32 (9th Cir. 2016); *Martinez v. Napolitano*, 704 F.3d 620, 622 (9th Cir. 2012). Every recent decision in this district addressing the exact § 1225/§ 1226 misclassification issue has rejected the government's § 1252(b)(9) argument for this same reason. See, e.g., *Monica Adriana Ruiz Yarleque v. Noem*, No. 5:25-cv-02836-MEMF-SP, 2025 WL 3043936, at *5–7 (C.D. Cal. Oct. 31, 2025); *Garcia v. Noem*, No. 5:25-cv-02771-ODW (PDX), 2025 WL 2986672, at *3–4 (C.D. Cal. Oct. 22, 2025); *Arrazola-Gonzalez v. Noem*, No. 5:25-cv-01789-ODW (DFMX), 2025 WL 2379285, at *1–2 (C.D. Cal. Aug. 15, 2025); *E.C. v. Noem*, No. 5:25-cv-02612-ODW (PDX), at *3 (C.D. Cal. Oct. 28, 2025); *Vasquez Perdomo v. Noem*, 790 F. Supp. 3d 850, 884–85 (C.D. Cal. 2025).

12. Section 1252(g) likewise poses no bar. The Supreme Court has held that § 1252(g) applies only to three discrete discretionary actions—commencing proceedings, adjudicating cases, and executing removal orders—and does not cover legal challenges to the scope of DHS's detention authority. *Reno*, 525 U.S. at 482; *Jennings*, 583 U.S. at 294–96. Petitioner does not challenge Respondents' decision to initiate removal proceedings. Rather, he challenges only the statutory authority under which Respondents continue to detain him. His claim presents a purely legal question that does not implicate any exercise of prosecutorial discretion, and district courts retain jurisdiction over such claims. *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004); *Ibarra-Perez v. United States*, No. 24-631, 2025 WL

2461663, at *6 (9th Cir. Aug. 27, 2025). Consistent with this binding authority, courts in this district have repeatedly held that § 1252(g) does not bar review of claims alleging detention under the wrong statutory provision. *Ruiz Yarleque*, 2025 WL 3043936, at *5–6; *Garcia*, 2025 WL 2986672, at *3; *Arrazola-Gonzalez*, 2025 WL 2379285, at *1; *E.C.*, at *3. Accordingly, this Court has jurisdiction to hear and resolve this petition.

13. Venue is proper in the Central District of California under 28 U.S.C. § 1391(e) because Petitioner is detained within this judicial district at the Adelanto ICE Processing Center, and because a substantial part of the events or omissions giving rise to this action occurred in this district.

**PARTIES**

14. Petitioner MIGUEL ANDRES IBARRA MARIN is a noncitizen currently detained by U.S. Immigration and Customs Enforcement at the Adelanto ICE Processing Center. He brings this petition pursuant to 28 U.S.C. § 2241 to challenge the legality of his continued civil immigration detention.

15. Respondent FERETI SEMAIA is the Warden of the Adelanto ICE Processing Center, where Petitioner is currently detained. He has immediate custody over Petitioner.

16. Respondent JAIME RIOS is the Director of the Los Angeles Field Office of U.S. Immigration and Customs Enforcement ("ICE"). He exercises authority over the detention and removal of noncitizens in the Los Angeles region, including Petitioner.

17. Respondent MARKWAYNE MULLIN is the Secretary of the U.S. Department of Homeland Security ("DHS"), the federal agency responsible for immigration enforcement and detention. He is sued in his official capacity.

18. Respondent TODD BLANCHE is the Attorney General of the United States and the head of the U.S. Department of Justice, which oversees the Executive Office for Immigration Review ("EOIR") and immigration judges. He is sued in his official capacity.

## REQUIREMENTS OF 28 U.S.C. § 2243

19. The habeas statute requires courts to act swiftly in reviewing unlawful detention. Under 28 U.S.C. § 2243, the court must "forthwith" grant the writ or issue an order to show cause unless it appears from the petition that the petitioner is not entitled to relief.

20. If an order to show cause is issued, the statute directs that the respondent must file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." Id. This statutory framework underscores the urgency of habeas relief, reflecting the historic role of the Great Writ as "perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963).

## FACTUAL BACKGROUND

21. Petitioner Miguel Andres Ibarra Marin is a twenty-nine-year-old native and citizen of Mexico. He was issued a B-1/B-2 visa and Border Crossing Card on November 3, 2022, valid through October 31, 2032. Petitioner first entered the United States in approximately May 2023 and thereafter traveled between Mexico and the United States on multiple occasions. Prior to his present detention, he had never been subjected to immigration enforcement. Most recently, Petitioner was admitted to the United States through Los Angeles International Airport on December 20, 2024, as a nonimmigrant visitor, with authorization to remain through June 19, 2025.

22. During his time in Southern California, Petitioner has established substantial personal, educational, and community ties. He has pursued his education and professional development, including studying English through the Los Angeles Unified School District's adult education program. Shortly before his detention, Petitioner was enrolled in a Beginning Low English as a Second Language course at Bell Adult School, attending classes four evenings each week. Petitioner has also pursued aviation training and holds credentials reflecting his training as a commercial pilot, consistent with professional aspirations he has pursued for years.

23. Petitioner's fiancée, Beatriz Muñoz Mercado, is a United States citizen and homeowner in Lakewood, California. She describes Petitioner as a deeply supportive and resourceful partner who has become an integral part of her household and daily life. Since joining her household, Petitioner has performed substantial repairs and improvements to the home, including installing security cameras and other technology that has increased Ms. Muñoz Mercado's sense of security. He has also routinely assisted her mother and friends with home repairs and provided Ms. Muñoz Mercado with significant practical and emotional support. Ms. Muñoz Mercado is prepared to provide Petitioner with stable housing, financial assistance, and emotional support upon his release.

24. The character letters submitted on Petitioner's behalf reflect a consistent pattern of hard work, generosity, self-reliance, and service to others extending well beyond his relationship with his fiancée. Petitioner's uncle, Raul Loza, has known him since childhood and describes him as someone who learned early that "nothing came in easy or for free." Mr. Loza recalls Petitioner seeking out small jobs even as a child, later working more than one job at a time, and supporting himself while pursuing aviation school in Mexico. He describes Petitioner as hardworking, well-mannered, and determined to earn what he has through his own effort.

25. Other letters provide concrete examples of Petitioner's willingness to assist others without expectation of compensation. Virginia Leticia Garcia, an older relative who has spent much of her life caring for a son with special needs, describes Petitioner regularly collecting cans and plastic bottles and bringing them to her so that she could recycle them for additional income. She explains that Petitioner minimizes the significance of that assistance and simply says that he wants to contribute however he can.

26. Similarly, Martha Aguirre, a United States citizen and small-business owner, describes Petitioner repeatedly helping with plumbing repairs, shelving, furniture assembly, and other work at her hair salon. When Ms. Aguirre offered him gas money or lunch money for his time, Petitioner declined and told her instead to "pay it forward." She describes him as respectful, generous, selfless, and consistently willing to help those around him. These accounts

are notable not merely because they describe Petitioner positively, but because they identify specific, ordinary acts demonstrating the role he plays in the lives of people around him.

27. On August 6, 2026, Petitioner was taken into federal immigration custody and is now detained at the Adelanto ICE Processing Center. He has remained separated from his fiancée, educational pursuits, community, and ordinary life since being taken into immigration custody.

28. DHS initiated removal proceedings against Petitioner following his detention by issuing a Notice to Appear dated August 6, 2026. In the Notice to Appear, DHS expressly alleges that Petitioner "ha[s] been admitted to the United States, but [is] removable for the reasons stated below." DHS alleges that Petitioner was admitted at Los Angeles on December 20, 2024 as a nonimmigrant visitor, with authorization to remain through June 19, 2025, and charges him as removable under INA § 237(a)(1)(B) for remaining in the United States beyond the period authorized by that admission. Petitioner's removal proceedings remain pending before the Adelanto Immigration Court, and he is not subject to a final order of removal.

29. Petitioner's present detention is civil and pre-final-order. Yet no adjudicator has made an individualized determination that Petitioner presents a danger to the community or a risk of flight requiring his continued incarceration. Petitioner has no criminal convictions. He has a United States citizen fiancée who owns a home in Southern California and is prepared to house and support him, ongoing educational and professional pursuits, and a network of family and community members whose letters describe not abstract character traits, but repeated acts of responsibility, generosity, and service to others.

30. Nevertheless, Petitioner remains detained without any individualized determination that his continued confinement is necessary to prevent flight or protect the community. Section 1226(a) expressly contemplates either detention or release on bond or conditional parole while removal proceedings remain pending. Whether Petitioner's personal history, stable home, educational and professional pursuits, extensive evidence of community

support, and other individual circumstances warrant continued detention is precisely the type of custody question contemplated by § 1226(a). No adjudicator has yet made that determination.

## LEGAL FRAMEWORK

**Section 1226(a)—Not Section 1225(b)—Governs Petitioner's Arrest and Continued Detention Following His Interior Arrest**

31. Pre-final order immigration detention is governed by two distinct provisions of the Immigration and Nationality Act—8 U.S.C. §§ 1225 and 1226—operating in separate spheres. The Supreme Court has explained that § 1225 applies to "aliens seeking admission into the country," whereas § 1226 applies to "aliens already in the country pending the outcome of removal proceedings." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). The Ninth Circuit has now squarely confirmed how that distinction applies to interior arrests: "aliens present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)." *Rodriguez Vazquez v. Bostock*, No. 25-6842, slip op. at 10 (9th Cir. July 30, 2026).

32. Section 1225's text and structure reflect its inspection-and-admission focus. Its provisions repeatedly reference "arriving" noncitizens, "stowaways," and actions by "examining immigration officers," and § 1225(b)(2)(A) applies by its terms to an "alien seeking admission." See *Lepe v. Andrews*, 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025); *Vazquez v. Feeley*, No. 2:25-CV-01542-RFB-EJY, 2025 WL 2676082, at *12–14 (D. Nev. Sept. 17, 2025). As courts recognized even before *Rodriguez Vazquez*, applying § 1225(b)(2)(A) to persons already residing in the United States and later arrested in the interior "pushes the statutory text beyond its breaking point." *Lopez Benitez v. Francis*, 2025 WL 2371588, at *7 (S.D.N.Y. Aug. 13, 2025); see also *United States v. Gambino-Ruiz*, 91 F.4th 981, 988–89 (9th Cir. 2024).

33. Section 1226, by contrast, governs arrest and detention pending a decision on whether a noncitizen is to be removed. Section 1226(a) expressly permits either detention or release on bond or conditional parole, except where a mandatory-detention provision applies. 8 U.S.C. § 1226(a)(1)–(2). Its implementing regulations provide for individualized custody review

before an immigration judge, including consideration of danger and flight risk. 8 C.F.R. § 1236.1(d); *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006); *Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024).

34. Consistent with these principles, district courts have rejected the government's expansive § 1225 theory with near-total unanimity and have held that interior arrestees are detained under § 1226(a), not § 1225(b). See, e.g., *Chavez Valdovinos v. Noem*, No. 25-CV-2439 TWR (KSC), slip op. at 9 (S.D. Cal. Sept. 25, 2025); *Yohan Diaz-Villatoro v. LaRose*, 2025 WL 3251377, at *3–4 (S.D. Cal. Nov. 21, 2025); *Aparicio Sanchez v. Noem*, 2025 WL 3214987, at *3–4 (S.D. Cal. Nov. 18, 2025); *Vasquez Garcia v. Noem*, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); *Lopez Benitez v. Francis*, No. 25-Civ-5937, 2025 WL 2267803 (S.D.N.Y. Aug. 8, 2025); *Martinez v. Hyde*, No. CV 25-11613-BEM, 2025 WL 2084238, at *9 (D. Mass. July 24, 2025); *Gomes v. Hyde*, No. 1:25-cv-11571-JEK, 2025 WL 1869299, at *8 (D. Mass. July 7, 2025); *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Kostak v. Trump*, No. 3:25-cv-01093-JE, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); *Benitez v. Noem*, No. 5:25-cv-02190 (C.D. Cal. Aug. 26, 2025) (minute order); *Leal-Hernandez v. Noem*, No. 1:25-cv-02428-JRR, 2025 WL 2430025 (D. Md. Aug. 24, 2025); *Romero v. Hyde*, No. 25-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Arrazola-Gonzalez v. Noem*, No. 5:25-cv-01789-ODW, 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); *Aguilar Maldonado v. Olson*, No. 25-cv-3142, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Dos Santos v. Noem*, No. 1:25-cv-12052-JEK, 2025 WL 2370988 (D. Mass. Aug. 14, 2025); *Rocha Rosado v. Figueroa*, No. CV 25-02157, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025), report and recommendation adopted, 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01874-SSS-BFM, slip op. at *13 (C.D. Cal. July 28, 2025); *Oliveros v. Kaiser*, No. 25-cv-07117-BLF, 2025 WL 2677125, at *4 (N.D. Cal. Sept. 18, 2025).

35. Petitioner's case falls squarely within this framework—and presents an even clearer application of § 1226 than the circumstances addressed in *Rodriguez Vazquez*. DHS's own Notice to Appear expressly alleges that Petitioner was admitted to the United States at Los

Angeles on December 20, 2024 as a nonimmigrant visitor and charges him under INA § 237(a)(1)(B) for remaining beyond the period authorized by that admission. DHS does not characterize Petitioner as an arriving alien or as a noncitizen present without admission or parole; instead, it expressly identifies him as a person who "ha[s] been admitted to the United States, but [is] removable for the reasons stated below." Petitioner was subsequently arrested in the interior of California, transferred to immigration custody, and placed in removal proceedings that remain pending. If, as *Rodriguez Vazquez* holds, even persons present without admission who are later apprehended in the interior are governed by § 1226, Petitioner—whom DHS itself alleges was inspected and admitted before his subsequent interior arrest—falls comfortably within § 1226's post-entry detention framework.

36. Nothing presently available to Petitioner establishes that he falls within any separate mandatory-detention provision. Petitioner has no criminal convictions. Accordingly, § 1226(a)'s discretionary framework governs his detention. To the extent Respondents contend that § 1225(b) nevertheless supplies their authority to detain Petitioner, that position is foreclosed by *Jennings* and *Rodriguez Vazquez*. And to the extent Respondents have not yet disclosed the statutory basis on which they purport to detain him, that omission cannot alter the statutory framework Congress prescribed.

**Because § 1226(a) Governs, Petitioner Has a Protected Liberty Interest and Due Process Rights in Connection with His Civil Detention**

37. This statutory distinction between §§ 1225 and 1226 reflects fundamental constitutional limits on civil immigration detention and the different due process rights afforded to persons already inside the United States. "The relevant distinction . . . is between persons inside the United States and persons outside the United States. That distinction is consistent with the long history of our immigration laws and with the Constitution." *Lepe v. Andrews*, No. 1:25-cv-01163-KES-SKO, 2025 WL 2716910, at *5 (E.D. Cal. Sept. 23, 2025) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)). Once a person enters the country, "the legal circumstance

changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id.*

38. Congress legislated against that constitutional backdrop. In distinguishing between "arriving" and "residing" noncitizens, Congress reflected "its understanding of longstanding due process precedent that recognizes the more substantial due process rights of noncitizens already residing in the U.S. [as compared to] those of noncitizens recently arriving." *Vazquez v. Feeley*, No. 2:25-cv-01542-RFB-EJY, 2025 WL 2676082, at *4 (D. Nev. Sept. 17, 2025) (citing *Knauff v. Shaughnessy*, 338 U.S. 537 (1950)). That constitutional distinction reinforces the statutory one: § 1226 governs detention of persons already present in the country pending removal proceedings, while § 1225 addresses detention associated with inspection and admission at the threshold of entry.

39. Civil immigration detention is "nonpunitive in purpose and effect" and implicates a fundamental liberty interest. *Zadvydas*, 533 U.S. at 690; see also *Singh v. Holder*, 638 F.3d 1196, 1203–04 (9th Cir. 2011) (recognizing the "substantial liberty interest at stake" in immigration custody). The government's legitimate interests in civil immigration detention are correspondingly limited to ensuring appearance at immigration proceedings and protecting the community. See *Zadvydas*, 533 U.S. at 690; *Padilla v. ICE*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). Accordingly, where § 1226(a) governs, the statutory scheme provides for individualized consideration of whether detention or release on bond or conditional parole is appropriate. See 8 U.S.C. § 1226(a); 8 C.F.R. § 1236.1(d); *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006).

40. The governing framework for determining whether the procedures accompanying civil detention satisfy the Fifth Amendment is the balancing test articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976). The Ninth Circuit applies *Mathews* in the immigration-detention context, and district courts throughout this Circuit have likewise employed that framework in assessing the constitutional adequacy of immigration custody procedures. See *Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022); *Jensen v. Garland*, No. 5:21-cv-01195-CAS-AFM,

2023 WL 3246522, at *4 (C.D. Cal. May 3, 2023); *Hernandez v. Wofford*, No. 1:25-cv-00986-KES-CDB (HC), 2025 WL 2420390, at *3 (E.D. Cal. Aug. 21, 2025); *Cordero Pelico v. Kaiser*, No. 25-cv-07286-EMC, 2025 WL 2822876, at *6 (N.D. Cal. Oct. 3, 2025); *Naser Noori v. Larose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025); *Oliveros v. Kaiser*, No. 25-cv-07117-BLF, 2025 WL 2677125, at *7 (N.D. Cal. Sept. 18, 2025); *O.P.A.M. v. Wofford*, No. 1:25-cv-01423, 2025 WL 3120552, at *9 (E.D. Cal. Nov. 7, 2025).

41. Under *Mathews*, Petitioner's private interest is at its apex: freedom from physical confinement. The government's interests in preventing flight and protecting the community are legitimate, but those interests are inherently individualized. Section 1226(a)'s discretionary custody framework provides the mechanism for determining whether those interests actually require confinement in a particular case. Here, Petitioner remains civilly detained even though no adjudicator has determined that he presents either a danger to the community or a risk of flight requiring continued incarceration.

42. Courts addressing the intersection of § 1226(a) and the Fifth Amendment have accordingly recognized that denying noncitizens governed by § 1226(a) meaningful access to individualized custody procedures raises serious due process concerns. See *Maldonado-Vazquez v. Feeley*, No. 5:24-cv-00452-SVW-PD, 2025 WL 2863421, at *10 (C.D. Cal. June 30, 2025); *Ruiz Yarleque v. Noem*, No. 5:25-cv-02836-MEMF-SP, 2025 WL 3043936, at *7–8 (C.D. Cal. Oct. 31, 2025); *Garcia v. Noem*, No. 5:25-cv-02771-ODW (PDx), 2025 WL 2986672, at *4–5 (C.D. Cal. Oct. 22, 2025); *Arrazola-Gonzalez v. Noem*, No. 5:25-cv-01789-ODW (DFMx), 2025 WL 2379285, at *2 (C.D. Cal. Aug. 15, 2025); *E.C. v. Noem*, No. 5:25-cv-02612-ODW (PDx), at *5 (C.D. Cal. Oct. 28, 2025); *Oliveros*, 2025 WL 2677125, at *7; *Hernandez Nieves v. Kaiser*, No. 25-cv-06921-LB, 2025 WL 2533110, at *4 (N.D. Cal. Sept. 3, 2025); *Noori*, 2025 WL 2800149, at *10; *Cordero Pelico*, 2025 WL 2822876, at *6; *O.P.A.M.*, 2025 WL 3120552, at *9. The precise procedural question presented here—where Petitioner has not yet received an individualized custody determination—must therefore be assessed against § 1226(a)'s

discretionary framework and the Fifth Amendment's protection against erroneous deprivation of physical liberty.

**Petitioner’s Continued Detention Has Not Been Shown Necessary to Serve a Legitimate Regulatory Purpose**

43. Civil immigration detention is constitutionally permissible only insofar as it serves the government's limited regulatory interests in preventing flight and protecting the community. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Hernandez v. Sessions*, 872 F.3d 976, 991 (9th Cir. 2017). Because immigration detention is civil rather than punitive, confinement must remain reasonably related to those legitimate regulatory purposes. *Zadvydas*, 533 U.S. at 690.

44. Nothing in the present record establishes that Petitioner’s continued incarceration is necessary to serve either purpose. Petitioner has no criminal convictions, substantial personal and community ties in Southern California, a stable home available upon release, and significant evidence of his responsibility, self-sufficiency, and support within the community. Yet none of those circumstances has ever been evaluated through an individualized custody determination.

45. Petitioner also has substantial incentives to remain in Southern California and comply with future proceedings. His United States citizen fiancée resides here and is prepared to provide him with housing, financial support, and assistance upon release. Before his detention, Petitioner was actively pursuing educational and professional development, including English-language instruction through the Los Angeles Unified School District's adult education program. He has also pursued aviation training and professional development and has established relationships with friends and community members who are prepared to support him upon release.

46. Most significantly, no adjudicator has ever determined that Petitioner poses a danger to the community or a meaningful risk of flight requiring his continued civil incarceration. No individualized custody determination has occurred at all. Petitioner's continued

confinement therefore rests not on any adjudicated finding that detention is necessary, but on the absence of the individualized process through which that question should be determined.

47. The same is true of flight risk. Petitioner has a stable residence available to him, substantial personal and community ties in Southern California, and pending immigration proceedings in which he has every incentive to participate. Yet no adjudicator has considered those circumstances and determined that detention is necessary to secure his appearance.

48. Section 1226(a)'s discretionary custody framework exists precisely to distinguish between individuals whose detention is actually necessary and those who may safely be released on appropriate conditions. The government's interests in preventing flight and protecting the community cannot be assessed categorically; they require consideration of the individual circumstances bearing on those risks. See 8 U.S.C. § 1226(a); *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006).

49. Petitioner therefore remains confined without any individualized determination that his continued detention actually advances either legitimate regulatory purpose recognized by the Supreme Court. His liberty cannot constitutionally be deprived on assumption alone. See *Zadvydas*, 533 U.S. at 690; *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). At minimum, the profound liberty interest implicated by his physical confinement requires constitutionally adequate procedures for determining whether continued detention is necessary.

**Immediate Release Is the Appropriate Remedy**

50. The writ of habeas corpus exists to remedy unlawful executive detention. Where the government detains an individual without statutory authority or in violation of the Constitution, federal courts possess broad authority to order release. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *Boumediene v. Bush*, 553 U.S. 723, 779 (2008); *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001).

51. Immediate release is warranted where continued immigration detention rests on a statutory framework that does not authorize the detention imposed. As set forth above, Petitioner's detention is governed by § 1226(a), the discretionary detention framework Congress

established for noncitizens in Petitioner's posture. Petitioner nevertheless remains incarcerated without any individualized determination that his confinement is necessary to prevent flight or protect the community.

52. Nor does the availability of a future custody proceeding necessarily remedy a deprivation of liberty that has already occurred without constitutionally adequate process. Procedural due process generally requires meaningful process at the time the deprivation occurs; a later proceeding does not simply erase the harm caused by unlawful confinement. See *Mathews v. Eldridge*, 424 U.S. 319, 331 (1976); *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017).

53. Consistent with those principles, courts in this District have ordered immediate release, rather than merely directing a future custody hearing, where continued immigration detention lacked a lawful basis. See *Andres Doroteo Garcia v. Semaia*, No. 5:26-cv-01525-MWC-RAO (C.D. Cal. Apr. 7, 2026) (ordering immediate release and rejecting the government's argument that a post-deprivation bond hearing constituted adequate relief); *Francis Kim Andaya Rubio v. Semaia*, No. 5:26-cv-01409-MRA-JDE (C.D. Cal. Apr. 23, 2026) (ordering immediate release because Respondents offered no legal justification for continued detention notwithstanding magistrate judge's recommendation of a bond hearing); *Ivon Guadalupe Caceres Zomosa v. Semaia*, No. 5:26-cv-03441-JDE (C.D. Cal. July 1, 2026) (granting habeas petition and ordering immediate release from ICE custody).

54. The same remedy is appropriate here if the Court concludes that Petitioner's present detention lacks lawful statutory or constitutional authority. Petitioner has no criminal convictions, substantial ties to Southern California, a stable home available upon release, and significant family and community support. Most importantly, no adjudicator has determined that he poses a danger or flight risk requiring civil incarceration. The Court should therefore grant the writ and order Petitioner's immediate release.

**Alternatively, Any Court-Ordered § 1226(a) Custody Hearing Must Provide Constitutionally Adequate Procedures**

55. Although § 1226(a) does not expressly allocate the burden of proof at custody-redetermination hearings, and the Board of Immigration Appeals has historically placed that burden on the noncitizen in ordinary § 1226(a) proceedings, see *In re Guerra*, 24 I. & N. Dec. 37 (BIA 2006); *In re Adeniji*, 22 I. & N. Dec. 1102, 1116 (BIA 1999), courts within the Ninth Circuit have held that different procedural protections may be constitutionally required where a federal court orders a custody hearing to remedy unconstitutional detention. See *Singh v. Barr*, 400 F. Supp. 3d 1005, 1018 (S.D. Cal. 2019) (citing *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011)).

56. The Ninth Circuit has acknowledged that *Singh* grounded its burden allocation in "general principles of procedural due process," while expressly declining in *Diaz v. Garland* to decide the extent to which *Singh* remains good law after *Jennings*. 53 F.4th 1189, 1196, 1199, 1202 n.4 (9th Cir. 2022). The Ninth Circuit has also recognized in the custody context that the government bears the burden of establishing dangerousness by clear and convincing evidence. *Martinez v. Clark*, 124 F.4th 775, 785–86 (9th Cir. 2024).

57. District courts within this Circuit have continued to require the government to justify detention by clear and convincing evidence where due process itself supplies the right to a remedial custody hearing. See *Alejandri-Rodriguez v. Larose*, 2026 WL 526747, at *2 (S.D. Cal. Feb. 25, 2026); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1089 (E.D. Cal. 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1038 (N.D. Cal. 2025); *Duong v. Kaiser*, 2025 WL 2689266, at *7–10 (N.D. Cal. 2025); *Matute v. Wofford*, No. 1:25-cv-01206-KES-SKO (HC), 2025 WL 2495767, at *8 (E.D. Cal. Oct. 3, 2025); *Gonzalez Salazar v. Noem*, 2025 WL 3063629, at *6; *Ledesma Gonzalez v. Noem*, 2025 WL 2841574, at *9.

58. Accordingly, if the Court determines that an individualized custody determination rather than immediate release is the appropriate remedy, Petitioner requests a prompt hearing at

which Respondents bear the burden of proving, by clear and convincing evidence, that continued detention is necessary to prevent flight or protect the community.

**EXHAUSTION OF REMEDIES**

59. There is no statutory exhaustion requirement applicable to this habeas petition. *McKart v. United States*, 395 U.S. 185, 193 (1969); *Laing v. Ashcroft*, 370 F.3d 994, 998 (9th Cir. 2004). Accordingly, any exhaustion requirement applicable to Petitioner's claims is prudential, not jurisdictional.

60. Prudential exhaustion may be excused where "(1) administrative remedies are inadequate or not efficacious, (2) pursuit of administrative remedies would be a futile gesture, [or] (3) irreparable injury will result." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007). The Ninth Circuit has additionally recognized that exhaustion may be inappropriate where the administrative process cannot resolve the legal issue presented or agency expertise would provide little assistance to the reviewing court. *Id.*; see also *Laing*, 370 F.3d at 1000–01. Those considerations warrant waiver here.

61. First, Petitioner's habeas claim presents a threshold question of law that does not depend upon agency expertise: which statutory detention regime Congress made applicable to a noncitizen whom DHS itself alleges was admitted to the United States and who was subsequently arrested in the interior. Indeed, DHS's Notice to Appear expressly alleges that Petitioner was admitted as a nonimmigrant visitor and charges him as removable under INA § 237(a)(1)(B) for remaining beyond the period authorized by that admission. The Ninth Circuit has now answered the relevant statutory question. See *Rodriguez Vazquez v. Bostock*, No. 25-6842, slip op. at 10 (9th Cir. July 30, 2026) (holding that noncitizens "apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)"). Petitioner's claim therefore does not ask this Court to second-guess an immigration judge's discretionary assessment of danger or flight risk. It asks the Court to determine the legal authority governing his detention and the constitutional process required before the Government may continue depriving him of his liberty. Those are questions of federal statutory and

constitutional law squarely within the competence of this Court. See *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024).

62. Second, requiring exhaustion would not materially advance the purposes served by prudential exhaustion in this case. Administrative review is unlikely to permit the agency to resolve the threshold statutory and constitutional questions presented here in a manner that would obviate judicial review. See *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (in determining whether prudential exhaustion should be required, courts consider, among other things, whether "administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review"). Petitioner does not challenge the outcome of an individualized bond determination; no such determination has occurred. Rather, he challenges the legality of his present detention without any individualized determination that continued confinement is necessary. His claim therefore presents a threshold challenge to the statutory authority and constitutional process underlying his detention, rather than a request for judicial review of an immigration judge's discretionary assessment of danger or flight risk. See *Singh v. Holder*, 638 F.3d 1196, 1203 n.3 (9th Cir. 2011) (recognizing that exhaustion was unnecessary where the constitutional challenge presented did not require further development of the administrative record); *Iraheta-Martinez v. Garland*, 12 F.4th 942, 949 (9th Cir. 2021) (recognizing an exhaustion exception for constitutional challenges to immigration procedures where the alleged error lies beyond the agency's authority to remedy).

63. Third, exhaustion would subject Petitioner to continuing irreparable harm. "It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). Petitioner remains physically confined each day without any adjudicator having determined that his detention is necessary to prevent flight or protect the community. Loss of physical liberty cannot later be restored, and requiring Petitioner to remain incarcerated while pursuing administrative proceedings would perpetuate the very deprivation he challenges. See *Iraheta-Martinez v.*

*Garland*, 12 F.4th 942, 949 (9th Cir. 2021); *Sola v. Holder*, 720 F.3d 1134, 1135 (9th Cir. 2013) (per curiam).

64. Courts have repeatedly excused prudential exhaustion where immigration detention presents a threshold legal challenge and continued confinement would cause irreparable injury. See *Arrazola-Gonzalez v. Noem*, No. 5:25-CV-01789-ODW (DFMX), 2025 WL 2379285, at *3 (C.D. Cal. Aug. 15, 2025); *Bedrosian v. Noem*, No. 5:25-CV-02814-KES, 2026 WL 127800, at *11 (C.D. Cal. Jan. 15, 2026); *Mumaev v. Semaia*, No. 5:25-CV-03409-FLA (MAR), 2026 WL 530765, at *2 (C.D. Cal. Feb. 20, 2026); *Hoyos Amado v. U.S. Dep't of Justice*, No. 25-cv-2687-LL (DDL), 2025 WL 3079052, at *3 (S.D. Cal. Nov. 4, 2025); *Garcia v. Noem*, No. 25-CV-2180-DMS-MMP, 2025 WL 2549431, at *4–5 (S.D. Cal. Sept. 3, 2025); *Chavez Valdovinos v. Noem*, No. 25-CV-2439-TWR (KSC), slip op. at 9 (S.D. Cal. Sept. 25, 2025).

65. Requiring exhaustion is particularly inappropriate where the habeas claim concerns the process constitutionally required to justify detention in the first place. Due process ordinarily requires constitutionally adequate procedures in connection with the deprivation of liberty; it does not presumptively place upon the person deprived of liberty the burden of initiating a later proceeding merely to obtain the process necessary to justify that deprivation. See *Mathews v. Eldridge*, 424 U.S. 319, 333–35 (1976). Thus, requiring Petitioner first to request a custody hearing as a prerequisite to federal review would risk converting the availability of a post-deprivation administrative remedy into a condition precedent to challenging the lawfulness of the underlying deprivation itself.

66. Nor does Petitioner seek to bypass the agency's role in making an individualized custody determination. If this Court concludes that immediate release is not warranted, Petitioner expressly requests, in the alternative, an order requiring a prompt and constitutionally adequate custody hearing under § 1226(a). The immigration court may then exercise its expertise in evaluating the individualized questions of danger and flight risk. What Petitioner asks this Court to decide is the antecedent legal question that administrative custody proceedings cannot

conclusively resolve: whether his present detention comports with the statute and the Fifth Amendment.

67. Accordingly, the purposes underlying prudential exhaustion would not be advanced by requiring Petitioner to remain incarcerated while first pursuing administrative custody proceedings. The legal questions presented do not require further factual development or agency expertise; administrative review cannot remedy the liberty already lost or conclusively resolve Petitioner's constitutional challenge; and continued detention imposes irreparable harm each day it persists. Under *Puga*, prudential exhaustion should therefore be excused.

## CLAIMS FOR RELIEF

### COUNT ONE

### (*Unlawful Detention Under the Immigration and Nationality Act and the Administrative Procedure Act*)

68. Petitioner re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

69. Petitioner is presently detained by Respondents pending the resolution of his removal proceedings. Although Respondents have not provided Petitioner with documentation identifying the statutory provision under which they presently assert authority to detain him, DHS's own Notice to Appear establishes the immigration posture relevant to that determination: DHS alleges that Petitioner was admitted to the United States as a nonimmigrant visitor and charges him as removable under INA § 237(a)(1)(B) for remaining beyond the period authorized by that admission. The Immigration and Nationality Act therefore establishes that Petitioner's detention is governed by 8 U.S.C. § 1226(a).

70. The INA draws a clear distinction between individuals "seeking admission" at the border, whose detention is governed by § 1225, and individuals already present in the United States pending removal proceedings, whose detention is governed by § 1226. *Jennings v. Rodriguez*, 583 U.S. 281, 288–89 (2018). The Ninth Circuit has now squarely held that individuals "apprehended in the interior of the United States are subject to the detention regime

of § 1226, not § 1225(b)(2)(A).” *Rodriguez Vazquez v. Bostock*, No. 25-6842, slip op. at 10 (9th Cir. July 30, 2026).

71. Petitioner falls squarely within § 1226. He was admitted to the United States as a nonimmigrant visitor and was not apprehended while “seeking admission” at a port of entry or during the inspection process. Rather, he was subsequently arrested in the interior of California and taken into immigration custody. He remains in ordinary removal proceedings and is not subject to a final order of removal.

72. In fact, Petitioner's circumstances present an even clearer application of § 1226 than those addressed in *Rodriguez Vazquez*. There, the Ninth Circuit held that even noncitizens present without admission who are later apprehended in the interior are governed by § 1226 rather than § 1225(b)(2)(A). Petitioner, by contrast, is expressly alleged by DHS to have been inspected and admitted pursuant to a nonimmigrant visa before his subsequent interior arrest, and DHS charges him as removable under § 237(a)(1)(B) precisely because he remained beyond the period authorized by that admission. Section 1225(b)'s inspection-and-admission detention framework therefore provides no statutory authority for his present detention.

73. Because Petitioner was admitted to the United States, was subsequently apprehended in the interior, and is presently detained pending a decision in his removal proceedings, his detention is governed by 8 U.S.C. § 1226. Nothing presently available to Petitioner establishes that he falls within a mandatory-detention provision of § 1226. Petitioner has no criminal convictions. Accordingly, § 1226(a)’s discretionary detention framework governs his custody.

74. To the extent Respondents are detaining Petitioner pursuant to § 1225(b)(2)(A), that detention exceeds the statutory authority conferred by the INA and is unlawful under *Jennings* and *Rodriguez Vazquez*. Respondents cannot lawfully subject Petitioner to § 1225(b)(2)(A)'s mandatory detention regime as an applicant “seeking admission” when DHS's own Notice to Appear affirmatively alleges that he was previously admitted to the United States

and charges him as removable under § 237(a)(1)(B) based on his overstay following that admission.

75. Such detention would likewise constitute agency action that is "not in accordance with law," "in excess of statutory jurisdiction," and "in excess of statutory authority" within the meaning of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A)–(C).

76. Alternatively, to the extent Respondents have not purported to invoke § 1225(b)(2)(A), Petitioner's detention remains subject to § 1226(a) and the statutory and constitutional limitations attendant to that discretionary detention framework. Respondents' failure to identify a lawful statutory basis for Petitioner's continued detention cannot itself supply authority that Congress has not provided.

77. Petitioner is therefore entitled to a declaration that his detention is governed by 8 U.S.C. § 1226(a), an order granting the writ of habeas corpus, and an order directing his immediate release from ICE custody. In the alternative, should this Court conclude that further custody proceedings are necessary, Petitioner requests an order requiring Respondents to provide a prompt and constitutionally adequate custody determination under 8 U.S.C. § 1226(a), at which Respondents bear the burden of proving by clear and convincing evidence that continued detention is necessary to prevent flight or protect the community.

**COUNT TWO**

**(*Violation of Fifth Amendment's Due Process Clause*)**

78. Petitioner re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

79. The Due Process Clause protects all persons within the United States from deprivation of liberty without constitutionally adequate procedures. Freedom from physical confinement lies at the core of the liberty interests safeguarded by the Constitution. *Zadvydas v. Davis*, 533 U.S. 678, 690–93 (2001).

80. Civil immigration detention may be justified only for limited regulatory purposes—principally preventing flight or protecting the community—and only when

accompanied by adequate procedural safeguards. *Id.* at 690; *Hernandez v. Sessions*, 872 F.3d 976, 991 (9th Cir. 2017).

81. Because Petitioner's detention is governed by the discretionary detention framework of 8 U.S.C. § 1226(a), his continued civil confinement implicates a profound liberty interest and must comport with the Fifth Amendment. Whether the procedures afforded in connection with that deprivation are constitutionally adequate is assessed under the balancing framework articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976).

**Private Interest**

82. Petitioner's private interest in freedom from civil confinement is at its apex. Courts have consistently recognized that immigration detention inflicts profound liberty harms by separating individuals from their families, homes, communities, and livelihoods. *Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 993–95.

83. Petitioner has substantial personal and community ties in Southern California. His United States citizen fiancée resides here and is prepared to provide him with housing, financial support, and assistance upon release. Before his detention, Petitioner was actively pursuing educational and professional development, including English-language instruction through the Los Angeles Unified School District's adult education program and aviation-related training and professional development. His detention has abruptly separated him from his fiancée and community and prevented him from continuing those pursuits.

84. The first *Mathews* factor therefore weighs strongly in Petitioner's favor.

**Risk of Erroneous Deprivation**

85. The risk of erroneous deprivation is substantial because Petitioner remains physically confined without any individualized determination that detention is necessary to prevent flight or protect the community.

86. No neutral adjudicator has evaluated the circumstances bearing on the necessity of Petitioner's continued detention. No individualized findings have been made concerning his

risk of flight, danger to the community, stable residence, relationship and community ties, educational and professional pursuits, or the availability of conditions short of detention.

87. The absence of individualized consideration is particularly consequential here. Petitioner has a stable residence available upon release, substantial personal and community ties in Southern California, and extensive evidence concerning his character and support network. Those circumstances bear directly on the necessity of continued detention, yet they have never been weighed by any neutral adjudicator.

88. The value of an individualized custody determination is correspondingly substantial. Such a proceeding permits a neutral adjudicator to determine whether detention actually serves the government's asserted regulatory interests and whether less restrictive conditions can adequately address any identified risk. Section 1226(a)'s discretionary custody framework exists precisely to permit that individualized inquiry.

89. The second *Mathews* factor therefore weighs heavily in Petitioner's favor.

**Government Interest**

90. The government has legitimate interests in ensuring Petitioner's appearance at future proceedings and protecting the community. But those interests do not establish an interest in detention untethered from an individualized assessment of whether confinement is necessary to accomplish them. See *Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 991.

91. Here, Respondents have not demonstrated through any individualized adjudication that Petitioner's continued detention is necessary to serve either interest. No adjudicator has determined that Petitioner presents a danger requiring detention or that he is likely to abscond if released subject to appropriate conditions. Petitioner has no criminal convictions, a stable residence available upon release, substantial personal and community ties in Southern California, and significant evidence of family and community support. None of those circumstances has been weighed in an individualized custody determination.

92. Providing a constitutionally adequate individualized custody determination imposes comparatively little administrative burden. Immigration judges routinely conduct

custody proceedings under § 1226(a), and such proceedings employ the very individualized danger-and-flight-risk inquiry relevant here. See *Cordero Pelico v. Kaiser*, 2025 WL 2822876, at *6.

93. Nor can the government claim a cognizable interest in avoiding procedures necessary to prevent unconstitutional deprivation of liberty. The government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983); see also *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013).

94. The third *Mathews* factor therefore also weighs in Petitioner's favor.

**Balance of Factors**

95. Balancing the *Mathews* factors demonstrates that Petitioner's continued civil confinement without an individualized determination of necessity implicates serious Fifth Amendment concerns. Petitioner's interest in physical liberty is profound; the risk of erroneous deprivation is substantial where no neutral adjudicator has considered the individualized circumstances bearing on danger and flight risk; and the government bears comparatively little burden in providing procedures designed to determine whether continued confinement is actually necessary.

96. Due process does not permit the government to deprive a person of physical liberty based merely on an untested assumption that detention is warranted. Where the government seeks to continue civil confinement to prevent flight or protect the community, constitutionally adequate procedures must meaningfully test whether those regulatory interests justify the deprivation imposed. See *Mathews*, 424 U.S. at 335; *Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 991.

97. Petitioner has received no such individualized determination. He therefore remains incarcerated without any adjudicator having determined that his continued detention is necessary to prevent flight or protect the community. Under the circumstances alleged herein,

that continued deprivation of liberty without constitutionally adequate process violates the Due Process Clause of the Fifth Amendment.

98. Petitioner is therefore entitled to an order granting the writ of habeas corpus and directing his immediate release from ICE custody. In the alternative, should this Court conclude that additional custody proceedings are necessary, Petitioner requests a prompt and constitutionally adequate custody determination under 8 U.S.C. § 1226(a), at which Respondents bear the burden of proving by clear and convincing evidence that continued detention is necessary to prevent flight or protect the community.

**PRAYER FOR RELIEF**

99. WHEREFORE, Petitioner respectfully requests that this Court:

a. Issue a writ of habeas corpus directing Respondents to immediately release Petitioner from ICE custody.

b. Declare that Petitioner's detention is governed by 8 U.S.C. § 1226(a), not 8 U.S.C. § 1225(b)(2)(A), and that, to the extent Respondents rely on § 1225(b)(2)(A) to detain Petitioner following his apprehension in the interior of the United States, such reliance is contrary to law and in excess of statutory authority, in violation of 5 U.S.C. § 706(2)(A) and (C).

c. Declare that Respondents' continued detention of Petitioner without the individualized custody procedures required by 8 U.S.C. § 1226(a) violates the Fifth Amendment's Due Process Clause.

d. In the alternative, if the Court concludes that immediate release is not warranted, order Respondents to provide Petitioner with a prompt custody determination under 8 U.S.C. § 1226(a), to be held within seven (7) days, before a neutral Immigration Judge, at which Respondents bear the burden of proving, by clear and convincing evidence, that Petitioner's continued detention is necessary to prevent flight or protect the community and that no less restrictive conditions of release would reasonably satisfy the Government's legitimate interests.

e. Expedite briefing and adjudication of this Petition pursuant to 28 U.S.C. § 1657(a) and the Court's inherent authority, given Petitioner's ongoing deprivation of liberty.

f. Award attorneys' fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d), and any other applicable authority.

**VERIFICATION PURSUANT TO 28 U.S.C. 2242**

I am submitting this verification on behalf of the Petitioner because I am one of Petitioner's attorneys. I have discussed with the Petitioner the events described in the Petition. Based on those discussions, I hereby verify that the factual statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

DATED: August 18, 2026

Respectfully Submitted,

Frances Arroyo #276747
Los Angeles Legal Advocates
farroyo@lalegaladvocates.com
1025 W 190th St
Suite 400
Gardena, CA 90248

Natalie Renee Shepherd
Of Counsel
(805) 907-5309
NatalieReneeShepherd@gmail.com